```
                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE SOUTHERN DISTRICT OF OHIO
                              EASTERN DIVISION
```

**BRIDGET M. SIEVERT,**

        Plaintiff,

  vs.                                                Civil Action 2:12-CV-257
                                                         Judge Smith
                                                          Magistrate Judge King

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

        Defendant.


<u>REPORT AND RECOMMENDATION</u>

      This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits.  This matter is now before the Court on *Plaintiff's Statement of Errors*, Doc. No. 15, *Defendant's Memorandum in Opposition* ("*Commissioner's Response*"), Doc. No. 18, and plaintiff's *Reply*, Doc. No. 22.

      Plaintiff Bridget M. Sievert filed her application for benefits on January 10, 2008, alleging that she has been disabled since March 1, 2000.  The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

      An administrative hearing was held on May 3, 2010, at which plaintiff, represented by counsel, appeared and testified, as did Jerry A. Olsheski, who testified as a vocational expert.  *PAGEID* 72.

In a decision dated August 10, 2010, the administrative law judge found that plaintiff was not disabled at any time prior to March 31, 2007, the date she was last insured for disability insurance purposes. *PAGEID* 57, 66. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on February 8, 2012. *PAGEID* 44-47.

Plaintiff was 42 years of age on the date she was last insured. *PAGEID* 65. She has at least a high school education and is able to communicate in English. *Id*. She has past relevant work experience as a legal secretary. *PAGEID* 97. She has not engaged in substantial gainful activity since March 2, 2000. *PAGEID* 36.

## I. Evidence of Record

Plaintiff was diagnosed with fibromyalgia in January 2004 by Harold E. Cook, M.D. *PAGEID* 400-02. Upon physical examination by Dr. Cook, 15 of 18 fibromyalgia tender points were positive, Patrick's test was negative and SLR was negative; there was mild tenderness of the paraspinal muscles in the intrascapular and the lumbar regions. *PAGEID* 401. Dr. Cook recommended a sleep study and physical therapy; he prescribed Pamelor, 10 mg, two to four times a day. *PAGEID* 401.

Plaintiff began physical therapy on February 17, 2004 for complaints of pain in the hips, waist, shoulders and knees. *PAGEID* 387-400. On February 24, 2004, plaintiff reported that her chief complaint was pain in the knees; her neck and shoulders were feeling better. *PAGEID* 395. On March 18, 2004, plaintiff reported significant improvement in her affect and mood. *PAGEID* 393. On March 25, 2004, plaintiff reported that she had "been doing a lot of work at

home – cleaning house and bedroom." *PAGEID* 392.  On April 23, 2004, plaintiff felt that "her activity level ha[d] [increased] 25%." *PAGEID* 391.  On April 23, 2004, the physical therapist noted good steady progress, a reported decrease in pain from 8 to 5-6 on a 10-point scale and less fatigue; plaintiff reported that she was feeling better, both physically and mentally.  *PAGEID* 389.

A March 2004 sleep study showed obstructive sleep apnea, a respiratory disturbance index of 14.9 and low oxygen saturation of 68 percent.  *PAGEID* 446.  Plaintiff's sleep apnea was not alleviated by either a CPAP or BiPAP using even a variety of masks and fittings. *PAGEID* 445-47.  Consequently, on April 19, 2005, plaintiff underwent an uvulopalatopharyngoplasty, tonsillectomy, septoplasty and bilateral inferior turbinate out-fracture and cryoprobe.  *PAGEID* 426-27, 431. In July 2005, plaintiff reported increased energy and better sleep. *PAGEID* 565.

March 2007 and January 2008 sleep studies documented continued sleep fragmentation secondary to obstructive sleep apnea syndrome. *PAGEID* 531-36.  The January 2008 study showed low oxygen saturation of 75 percent.  *PAGEID* 532.

Plaintiff has reported to an emergency room for migraines, at times accompanied by acute chest and abdominal pain and vomiting, on a number of occasions. *See PAGEID* 412-13, 591-612.  *See PAGEID* 412-13.

July 2005 and September 2007 x-rays of plaintiff's hips show moderately severe degenerative osteoarthritis of the left hip with joint space narrowing.  *PAGEID* 548, 580.  In July 2005, Steven L. Delaveris, D.O., plaintiff's treating physician, noted that

plaintiff's left hip popped, clicked and caused pain upon Patrick Faber maneuver and external rotation of the left hip. *PAGEID* 565. Upon examination in September 2007, plaintiff was able to flex her hip to 100 degrees, abduct to 30 degrees, internally rotate 10 degrees and externally rotate 20 degrees. *PAGEID* 580. She reported pain with any manipulation of the hip. *Id*. The condition worsened after the date plaintiff was last insured for disability insurance purposes. *See PAGEID* 553. On April 8, 2008, plaintiff underwent a left total hip arthroplasty. *PAGEID* 683-686.

In October 2007, plaintiff saw Carl C. Berasi, D.O., for complaints of pain in her knees. *PAGEID* 681. Examination revealed no effusion, full range of motion, mild crepitus, normal medial and lateral retinacular laxity and intact collateral and cruciate ligaments. *Id*. A McMurray's test was negative. *Id*. X-rays revealed early spurring and joint space narrowing and probable early degenerative arthritis in both knees. *Id*. Plaintiff underwent cortisone injections on December 19, 2007 and January 9, 2008. *PAGEID* 574, 576.

The administrative record contains no mental health records for the period of March 1, 2000 through February 8, 2005. On February 9, 2005, plaintiff began treatment with Marjorie Curtis-Gallagher, M.D. *PAGEID* 639-41. At that time, plaintiff's depression was characterized as "mild," and her mood was "fairly stable." *PAGEID* 639. Dr. Curtis-Gallagher diagnosed bipolar 2 disorder and personality disorder, NOS. Plaintiff's condition did not meet the diagnostic criteria for major depressive disorder. *Id*. In April 2008, Dr.

Curtis-Gallagher noted that plaintiff experienced "mild decreased concentration" occasionally. *Id.* According to Dr. Curtis-Gallagher, plaintiff had "no significant restriction of daily activities," "[t]here [was] no impairment in her interests, habits, or behavior," and "[s]he ha[d] no problems with social interactions." PAGEID 640-41. Plaintiff was "able to tolerate stress of daily living and, I believe, would be able to work, but in preferably a more-supportive, low-stress environment." *Id*.

A state agency psychologist reviewed the record in May 2008 and opined that plaintiff was moderately limited in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." PAGEID 659. Plaintiff would also be moderately limited in her ability to "respond appropriately to changes in the work setting." *Id*.

That same month, a state agency physician reviewed the record and opined that plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could stand and/or walk for a total of six hours in an eight hour workday, and could sit for about six hours in an eight hour workday. PAGEID 664. Plaintiff could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, but could never climb ladders, ropes, or scaffolds. PAGEID 665.

**II. The Administrative Hearing**

Plaintiff testified at the administrative hearing that she stopped working in July 2000 because of extreme fatigue, chronic pain, a skin condition caused by allergies and chemical sensitivities in the

office and a general feeling of malaise. *PAGEID* 81-82. She also had trouble with concentration, focus and keeping up with the pace of her job. *PAGEID* 92. It is the severe fatigue and chronic pain, difficulty sitting or standing for long periods of time, difficulty walking and bending, and the need rest frequently and nap that keep her from working. *PAGEID* 96. Plaintiff also believes that her allergies prevent her from working in an office or outdoors. *Id*.

Plaintiff's pain has worsened since she stopped working in 2000. *PAGEID* 83. She attributes the pain to a pituitary disorder, fibromyalgia, knee problems and migraines. *PAGEID* 81, 85-88, 94-95. She began treatment with human growth hormone in 2003, which somewhat alleviated the pituitary disorder. *PAGEID* 83-84. The pain caused by her fibromyalgia is aggravated by increased activity. *PAGEID* 84. Her persistent knee pain is treated with medication and injections. *PAGEID* 87-88.

Plaintiff also testified that she suffers from migraines fairly regularly and, as a result, has to visit the emergency room approximately once a year for treatment. *PAGEID* 94. She experienced migraines even while working full-time, although they could be controlled with medication if caught early. *Id*.

Plaintiff testified that her sleep apnea improved, but was not eliminated, since surgery. She still experiences severe fatigue and pain. *PAGEID* 95.

Prior to the date that plaintiff was last insured, she was unable to "do a whole lot physically." *PAGEID* 88. She could occasionally prepare a light meal, drive short distances, fold laundry and do

dishes; she could vacuum for brief periods, do a "little bit" of gardening, travel to her son's swim meets and use a computer. *PAGEID* 88, 90-91. There were times, however, that she could "barely function at all." *PAGEID* 89. Plaintiff's son helped her carry heavy objects and her former husband did the grocery shopping. *PAGEID* 88, 90.

In late 2007, plaintiff underwent a divorce and suffered consequent depression. *PAGEID* 91. Even prior to her divorce, her depression affected her ability to concentrate at work. *PAGEID* 92.

The vocational expert testified that plaintiff's past relevant work experience as a legal secretary was sedentary and skilled. *PAGEID* 97-98. Asked to assume a claimant with plaintiff's vocational profile and a residual functional capacity for a reduced range of light work that is not fast-paced and does not have strict time-limited tasks, the vocational expert responded that such a claimant could not perform plaintiff's past relevant work, but could perform other unskilled, light jobs, including such jobs as assembler (500,000 jobs nationally), hand packer (275,000 jobs nationally) and production inspector (250,000 jobs nationally). *PAGEID* 97-99.

**III. The Administrative Decision**

In his decision, the administrative law judge found that plaintiff's severe impairments consist of "fibromyalgia, migraines, sleep apnea, osteoarthritis, and affective disorder." *PAGEID* 57. Through the date that she was last insured, however, plaintiff's impairments neither met nor equaled any listed impairment. *PAGEID* 58. The administrative law judge went on to find that, through the date that she was last insured, plaintiff had the residual functional

capacity ("RFC") to

> sit, stand, and walk for 6 hours in an 8 hour workday. She could lift 10 pounds frequently and 20 pounds occasionally. She could occasionally climb stairs, stoop, kneel, crouch, and crawl. She could not climb ladders, ropes, or scaffolding. Mentally, she was limited to work that did not have strict time-limited tasks and was not fast paced.

*PAGEID* 60. In making this finding, the administrative law judge gave "great weight and significance" to the opinion of plaintiff's treating mental health provider, Dr. Curtis-Gallagher, because it was "consistent with and supported by the objective medical evidence of record." *PAGEID* 63. The administrative law judge also gave "great significance" to the opinion of the state agency psychologist. *PAGEID* 64. The administrative law judge also adopted the physical functional capacity assessment of the state agency physicians because that assessment was "consistent with and well supported by the evidence of the record as a whole." *Id*. Further, the administrative law judge provided extensive consideration of plaintiff's subjective complaints of pain, but found that plaintiff could not "be found credible regarding the excessive pain and symptoms she allege[d]." *Id*.

   Relying on the testimony of the vocational expert, the administrative law judge found that plaintiff was unable to perform her past relevant work as a legal secretary, but could perform a significant number of jobs in the national economy despite her impairments and lessened capacity. *PAGEID* 66-67. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act at any time prior to the lapse of her insured status. *PAGEID* 66.

**IV.	Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

Plaintiff, who is proceeding without the assistance of counsel, challenges both the decision of the Appeals Council as well as the decision of the administrative law judge.

### A. The Appeals Council and New Evidence

Plaintiff argues that she should have been granted another hearing before the Appeals Council and that the evidence she submitted to the Appeals Council, which was never presented to the administrative law judge, should have been considered by the Appeals Council and should now be considered by this Court. *See Statement of Errors*, pp. 2-4.[1]

On February 8, 2012, the Appeals Council declined to review the decision of the administrative law judge. *PAGEID* 44-46. When the Appeals Council denies a claimant's request for review, the decision of the administrative law judge becomes the final decision of the Commissioner. *Casey v. Secy. of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (citing 20 C.F.R. § 404.955). Under such circumstances, a court called upon to review the final decision of the Commissioner of Social Security is confined to a review of the administrative law judge's decision and the evidence presented to the administrative law judge. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (citing *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)). This Court has no authority to review the decision of the Appeals Council. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) ("[T]he district

---

[1] Plaintiff submitted numerous letters to the Appeals Council, *see PAGEID* 144, 322, 343, 345, 348, and approximately 80 pages of additional evidence that the Appeals Council made part of the record. *See PAGEID* 44-49, 144-71, 322-357, 784-829. Plaintiff has also attached 51 pages of new material to her *Statement of Errors* and represents that she submitted these materials to the Appeals Council, which failed to incorporate those materials into the record. *See Statement of Errors*, p. 3.

court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision.").

A District Court may, under certain circumstances, remand a case under Sentence 6 of 42 U.S.C. § 405(g) for further administrative proceedings in light of new and material evidence. *Id*.

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

42 U.S.C. § 405(g). A plaintiff has the burden under this provision to demonstrate that the additional evidence presented is both "new" and "material" and that there is "good cause" for the failure to present this evidence to the administrative law judge. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).

Evidence is "new," for purposes of this provision, only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990). Evidence is "material" only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). *See also Faucher v. Sec'y of Health & Human Servs*., 17 F.3d 171, 174 (6th Cir. 1994). A plaintiff may establish "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence at the administrative hearing. *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001). This

11

standard applies to evidence submitted for the first time to the Appeals Council. *Id.*; *Cline*, 96 F.3d at 148.

The additional evidence submitted by plaintiff to the Appeals Council includes, *inter alia*, medical records from 2010 and 2011, testimony of Elana Christophides, M.D., given in a December 2008 deposition during the course of plaintiff's divorce case, and an April 14, 2011 statement in which Dr. Delaveris indicated that plaintiff should be excused from jury duty because she was not able to hold full-time employment. *PAGEID* 351, 784-800, 829. Plaintiff has also submitted an article on fibromyalgia, an internet profile for Dr. Kevin Hackshaw, a 2009 decree of shared parenting, documents related to plaintiff's 2004 and 2010 bankruptcies, a guide on adult mental impairments, medical records from Dr. Delaveris and William R. Fitz, M.D., from 2010 and 2011, letters from plaintiff to the Appeals Council, and a December 20, 2011 affidavit of Dr. Delaveris, who opines that plaintiff "is disabled[] and that her disabilities are severe and limit her functioning such that she cannot hold a job." *See* Doc. No. 15-1, p. 50.

Even assuming that plaintiff actually seeks a Sentence 6 order of remand, plaintiff has not met her burden of establishing that such an order of remand is appropriate. As to the medical records that predate the decision of the administrative law judge, plaintiff offers no explanation why those records were not submitted at the administrative hearing. Second, the medical records from 2010 and 2011 were generated long after March 31, 2007 – *i.e.*, the date that plaintiff's insured status expired; plaintiff has not established that

such documents are material even if they establish a deterioration in plaintiff's conditions since the lapse of her insured status.  *See Smith v. Comm'r of Soc. Sec.*, 473 F. App'x 443, 445-46 (6th Cir. 2012) (citing *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 277-78 (6th Cir. 2010)).  *See also Oliver v. Sec. of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).  The remainder of the documents submitted by plaintiff are not material because there is not a reasonable probability that the Commissioner would have reached a different result had the new evidence been presented to the administrative law judge.  In any event, plaintiff has not established good cause for her failure to acquire this additional evidence in time to present it to the administrative law judge.  Remand is therefore not warranted under even Sentence 6 of 42 U.S.C. § 405(g).

  **B.** **Treating Physician Rule**

Plaintiff maintains that the administrative law judge erred in giving controlling weight to the opinion of Dr. Curtis-Gallagher, plaintiff's treating psychiatrist, and in failing to give controlling weight to the opinions of Dr. Pickstone, plaintiff's current treating psychiatrist, Dr. Delaveris, and Dr. Cook.  *See Statement of Errors*, pp. 6-11.

The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  Even if the opinion of a treating provider is not entitled to controlling weight, an

13

administrative law judge is nevertheless required to determine how much weight the opinion is entitled to by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole.  20 C.F.R. § 404.1527(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, i.e., reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).

In the case presently before the Court, Dr. Curtis-Gallagher opined in April 2008  - *i.e.*, after the lapse of plaintiff's insured status - that plaintiff was "able to tolerate stress of daily living and . . . would be able to work, but in preferably a more-supportive, low-stress environment."  *PAGEID* 640-41.  The administrative law judge gave "great weight and significance" to that opinion because it was "consistent with and supported by the objective medical evidence of record," *PAGEID* 63,  and incorporated it into his assessment of plaintiff's RFC.  Plaintiff argues that it was error to give Dr. Curtis-Gallagher's opinion controlling weight because that opinion was flawed.  *See Statement of Errors*, pp. 6-11.  The administrative law

judge in this case noted and followed the appropriate standards, performed the appropriate evaluation of the evidence and articulated the bases for his decision to assign controlling weight to Dr. Curtis-Gallagher's opinion.  The administrative record does not contain an opinion from any other treating physician.[2]  The administrative law judge's decision therefore enjoys substantial support in the record.  This Court may not reverse that decision even if the record reflects evidence supporting the contrary conclusion. *See Longworth*, 402 F.3d at 595.

**C.   RFC**

Plaintiff also argues that the administrative law judge erred in his RFC determination.  *See id*. at p. 24.  An RFC determination is an indication of an individual's work-related abilities despite their limitations.  *See* 20 C.F.R. § 416.945(a).  The RFC is an administrative finding of fact reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004).  It represents the most, not the least, that a claimant can do despite her impairments.  20 C.F.R. §§ 404.1545(a); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).  In assessing a claimant's RFC, an administrative law judge must consider all relevant record evidence, including medical source opinions, on the severity of a claimant's impairments.  *See* 20 C.F.R. §§ 404.1527(d), 404.1545(a).  Furthermore,

---

[2] In this regard, plaintiff argues that the opinion of her current psychologist, with whom she has treated since 2010, should have been given controlling weight.  *Statement of Errors*, p. 10.  That psychologist's opinion is not included in the administrative record and, even if it were, is not material because it pertains to a period well beyond the lapse of plaintiff's insured status on March 31, 2007.  *See Casey*, 987 F.2d at 1233.

15

courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned administrative law judges against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, No. 1:08-CV-828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008).

In the case presently before the Court, the administrative law judge found that plaintiff had the RFC to

> sit, stand, and walk for 6 hours in an 8 hour workday. She could lift 10 pounds frequently and 20 pounds occasionally. She could occasionally climb stairs, stoop, kneel, crouch, and crawl. She could not climb ladders, ropes, or scaffolding. Mentally, she was limited to work that did not have strict time-limited tasks and was not fast paced.

*PAGEID* 60. In making this RFC assessment, the administrative law judge gave "great weight and significance" to the opinion of Dr. Curtis-Gallagher and adopted the opinions of the state agency physician and psychologist. *PAGEID* 60, 64. No doctor offered an opinion of other or greater limitation of function than those expressed by Dr. Curtis-Gallagher and the state agency physician and psychologist. The administrative law judge adopted the medical opinions of record in his RFC determination and there is no contrary evidence in the record. The administrative law judge's decision is therefore supported by substantial evidence and this Court may not second-guess that decision.

    **D.**    **Credibility**

The administrative law judge found that plaintiff's subjective complaints could not "be found credible regarding the excessive pain and symptoms she allege[d]." *Id.* To the extent that plaintiff

challenges this finding, that challenge is without merit.  A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability.  *Casey*, 987 F.2d at 1234.  *See also* 42 U.S.C. § 423(d)(5)(A).  In evaluating subjective complaints, it must be determined whether there is objective medical evidence of an underlying medical condition.  *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994).  If so, then the evaluator must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint.  *Id.*; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness' demeanor while testifying.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)).  However, credibility determinations must be clearly explained.  *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).  If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations.  *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. and Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge noted and followed the appropriate standards, performed the appropriate evaluation of the evidence and clearly articulated the bases of his credibility determinations.  The administrative law judge devoted almost five pages to his consideration of plaintiff's subjective complaints, *PAGEID* 60-64, but nevertheless found that those complaints were not credible.  The analysis and the credibility determination of the administrative law judge enjoy substantial support in the record.  The Court will not – and indeed may not – revisit that credibility determination.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to

*de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


February 4, 2013                          *s/Norah McCann King*
                                          Norah M$^c$Cann King
                                          United States Magistrate Judge